BILAL A. ESSAYLI
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
KEVIN B. REIDY (Cal. Bar No. 320583)
BENEDETTO L. BALDING (Cal. Bar No. 244508)
Assistant United States Attorneys
Major Frauds/Transnational Organized Crime Sections
        1100/1400 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:    (213) 894-8536/2274
        Facsimile:    (213) 894-0141
        E-mail:       kevin.reidy@usdoj.gov;
                      benedetto.balding@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>ANDREW A. WIEDERHORN, et al.<br><br>              Defendants. | No. CR 24-00295-RGK<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT WIEDERHORN'S MOTION TO COMPEL THE PRODUCTION OF OUTSTANDING DISCOVERY (DKT. 118) |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kevin B. Reidy and Benedetto L. Balding, hereby files its opposition to defendant Andrew A. Wiederhorn's motion to compel the production of outstanding discovery (Dkt. 118).[1]

//

//

---

[1] Defendant William J. Amon has joined defendant Wiederhorn's motion. (Dkt. 119.)

1      The government's opposition is based upon the attached

2  memorandum of points and authorities, the files and records in this

3  case, and any additional evidence or argument that the Court may wish

4  to consider at a hearing on this matter.

5  Dated: April 18, 2025              Respectfully submitted,

6                                      BILAL A. ESSAYLI
                                        United States Attorney
7
                                        LINDSEY GREER DOTSON
8                                       Assistant United States Attorney
                                        Chief, Criminal Division
9
                                          /s/
10                                     _____
                                        KEVIN B. REIDY
11                                      BENEDETTO L. BALDING
                                        Assistant United States Attorneys
12
                                        Attorneys for Plaintiff
13                                      UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.    INTRODUCTION...................................................1

II.   FACTUAL BACKGROUND.............................................2

      A.    The 1990s Shareholder Loans Are Relevant to Defendant
            Wiederhorn's Culpable State of Mind in This Case and
            Necessary to Tell a Comprehensive Story at Trial.........2

      B.    Wiederhorn's 1990s Shareholder Loans Were the Subject
            of Criminal and Civil Investigations.....................4

      C.    The Government Has Made Efforts to Locate and Turn
            Over Evidence Related to the 1990s Shareholder Loans
            Investigation............................................6

III.  ARGUMENT......................................................8

      A.    Legal Standard...........................................8

      B.    Defendants Are Not Entitled to All Government "Notes
            or Internal Correspondence" Regarding Defendant's
            Attorney's Presentations.................................9

      C.    Defendant Is Not Entitled to the IRS-CI Special Agent
            Report Regarding the 1990s Shareholder Loans............11

      D.    The Court Should Not Order Discovery of Any
            Destruction of Decades-Old Materials from Defendant's
            Prior Criminal Case.....................................13

      E.    Defendants' Request to Search for 1990s Shareholder
            Loans Discovery and Produce All Discoverable Material
            Is Moot.................................................15

      F.    Defendants' Request for "Immediate" Production or
            Production within 14 Days of Court's Order Should Be
            Denied as Premature.....................................16

IV.   CONCLUSION...................................................17

1

**TABLE OF AUTHORITIES**

2

**CASES**

3    <u>Akiona v. United States</u>, 938 F.2d 158 (9th Cir. 1991)..........13, 14

4    <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)...........................passim

5    <u>Doe v. Society of Missionaries of Sacred Heart</u>, 2014 WL 1715376,
        (N.D. Ill. May 1, 2014)......................................10
6

7    <u>Giglio v. United States</u>, 405 U.S. 150 (1972).......................9

     <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947)............................9
8

9    <u>Lopez v. Ryan</u>, 630 F.3d 1198 (9th Cir. 2011)......................10

10   <u>Pamida, Inc. v. E.S. Originals, Inc.</u>, 281 F.3d 726 (8th Cir.
        2002)........................................................9

11   <u>Smart v. County of Gloucester</u>, 2024 WL 532092 (D.N.J. Feb. 8,
        2024)........................................................14
12

13   <u>United States ex rel. Burroughs v. DeNardi Corp.</u>, 167 F.R.D. 680
        (S.D. Cal. 1996).............................................10

14   <u>United States v. Agurs</u>, 427 U.S. 97 (1976)......................9, 11

15   <u>United States v. Armstrong</u>, 517 U.S. 456, 463 (1996)..............12

16   <u>United States v. Bagley</u>, 473 U.S. 667 (1985).......................9

17   <u>United States v. Balwani</u>, 2022 WL 1720081 (N.D. Cal. May 27,
        2022)........................................................15
18

19   <u>United States v. Coppa</u>, 267 F.3d 132, 136 (2d Cir. 2001)..........16

     <u>United States v. Fernandez</u>, 231 F.3d 1240 (9th Cir. 2000)........16
20

21   <u>United States v. Fort</u>, 472 F.3d 1106 (9th Cir. 2007)..............12

22   <u>United States v. Grossman</u>, 843 F.2d, 78 (2d Cir. 1988)............11

23   <u>United States v. Harold</u>, 734 F. Supp. 3d 1102 (D. Or. 2024).......16

24   <u>United States v. Howell</u>, 231 F.3d 615 (9th Cir. 2000).............15

25   <u>United States v. Jefferson</u>, 2025 WL 53338 (W.D. Wash. Jan. 8,
        2025)........................................................15

26   <u>United States v. Mann</u>, 61 F.3d 326 (5th Cir. 1995)................12

27   <u>United States v. Nixon</u>, 418 U.S. 683 (1974).......................16

28   <u>United States v. Romo-Chavez</u>, 681 F.3d 955 (9th Cir. 2012)........13

United States v. Ruiz, 536 U.S. 622 (2002)...........................8

United States v. Sager, 227 F.3d 1138 (9th Cir. 2000)..............15

United States v. Sanmina Corp., 968 F.3d 1107 (9th Cir. 2020).......9

United States v. Weigand, 482 F. Supp. 3d 224 (S.D.N.Y. 2020)......16

United States v. Zemlyansky, 945 F. Supp. 2d 438 (S.D.N.Y. 2013)...16

Vick v. Texas Employment Commission, 514 F.2d 734 (5th Cir.
    1975)..........................................................14

Weatherford v. Bursey, 429 U.S. 545 (1977)..........................8

**RULES**

Federal Rule of Criminal Procedure 16......................9, 11, 12

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION**

3          Defendants Andrew A. Wiederhorn and William J. Amon ask this

4 Court to compel discovery related to defendant Wiederhorn's first

5 shareholder-loan-related fraud from the late 1990s.  Defendants'

6 motion should be denied.  <u>First,</u> defendants' request for all notes or

7 correspondence related to 1990s shareholder loan attorney

8 presentations should be denied because the request seeks opinion work

9 product or purported <u>Brady</u> information already in defendant's

10 possession.  <u>Second</u>, this Court should not order the government to

11 turn over the IRS-CI Special Agent Report related to the 1990s

12 shareholder loan fraud because the report is protected from

13 disclosure by Rule 16 and its inculpatory nature excludes it from the

14 government's <u>Brady</u> obligations.  <u>Third,</u> the Court should not order

15 discovery related to the destruction of 1990s shareholder loan

16 investigation evidence because defendant cannot possibly show bad

17 faith or misconduct based upon the disposition of such evidence years

18 before the government first learned that defendant was engaging in a

19 similar fraud in this case.  <u>Fourth,</u> defendants' request that the

20 government search the files of various agencies and DOJ components

21 for 1990s shareholder loan evidence should be denied as moot because

22 the government has already conducted the requested searches.

23 <u>Finally,</u> defendants' requests for immediate production of discovery

24 or production within two weeks of the Court's order should be denied

25 as premature.

26

27

28

II.  **FACTUAL BACKGROUND**

 A.  **The 1990s Shareholder Loans Are Relevant to Defendant Wiederhorn's Culpable State of Mind in This Case and Necessary to Tell a Comprehensive Story at Trial[2]**

Evidence of defendant Wiederhorn's first effort to extend himself tens of millions in disguised compensation in the form of shareholder loans tends to show that he made his second effort (the one at the center of this case) with knowledge of the sham loans' illegality, with a lack of intent to repay the loans, and motivated by a desire not to pay income tax.

During the 1990s, defendant Wiederhorn caused a company for which he served as CEO, Wilshire Credit Corporation ("WCC"), to issue him approximately $65 million in shareholder loans.  (Dkt. 1 ¶ 29.) As the balance of the shareholder loan swelled, Wiederhorn's tax advisor, C.G., grew concerned that the "shareholder loans were 'disguised compensation'" and communicated her concerns to Wiederhorn.  (Reidy Decl., Ex. A at 2.)  C.G. and Wiederhorn discussed her concerns with Wiederhorn's shareholder loans at most of the monthly meetings they had together.  (Id. at 3.)  During those conversations, Wiederhorn told C.G. that he "did not want to pay taxes on the shareholder loans either as distributions or income." (Id.)  But C.G. grew troubled with treating the shareholder loans as loans because of key features of the transactions that revealed they were actually compensation.

---

[2] The government will provide a more fulsome discussion of the bases for admissibility of the 1990s Shareholder Loans when defendants actually move for their exclusion.  (See Dkt. 118-1 at 3 ("Mr. Wiederhorn will move to exclude any mention of the 1990s loans at the appropriate time."); Dkt. 119 at 3 ("[T]he Motion is not an evidentiary motion and Mr. Amon will make his own evidentiary motions when timely.").)

1    Despite frequently hearing those concerns from C.G. over the
2    course of her engagement, defendant Wiederhorn later caused FAT and
3    FOG to extend him millions in shareholder loans that shared many of
4    the hallmarks of "disguised compensation" that C.G. had communicated
5    to him.  Some examples:

6    • C.G. told Wiederhorn that any shareholder loans that he
7      extended to himself after he claimed to be insolvent would
8      be viewed as "distributions," or income, because "a lender
9      would not continue to lend money to someone after they
10     declared they were insolvent."  (Id. at 2, 4.)  Yet after
11     causing FOG to forgive $24 million in shareholder loans to
12     himself in 2017, Wiederhorn caused FOG to extend him
13     another $16.8 million in shareholder loans between 2017 and
14     December 2019 and did not report it as income. (See Dkt. 1
15     ¶¶ 71-72.)

16    • C.G. told Wiederhorn that the shareholder loans would be
17      viewed as compensation if he did not pay interest.  (Reidy
18      Decl. Ex. A at 3.)  Yet Wiederhorn did not make any
19      interest payments on the shareholder loans he received from
20      FOG.  (Dkt. 1 ¶ 54.)

21    • C.G. also told Wiederhorn that the shareholder loans would
22      be viewed as disguised compensation if he "had nominally
23      low" salary "and a large amount of shareholder loans."
24      (Reidy Decl. Ex. A at 2-3.)  Yet Wiederhorn flouted C.G.'s
25      advice and candidly admitted to personal lenders that he
26      received "$3m-4m distributions from my company as loans"

27
28

3

1          annually, well in excess of his approximately $400,000

2          annual salary. (Dkt. 1 ¶ 62.)

3      Wiederhorn and C.G. had lunch sometime after Wiederhorn had

4  taken FAT public in 2017 but before January 2019, and Wiederhorn

5  raised the subject of shareholder loans once again. (Reidy Decl. Ex.

6  A at 4.) In a revealing remark from someone who would later be

7  charged with diverting millions in funds from his publicly traded

8  company to a private holding company to disguise his violations of

9  legal restrictions on such transactions, Wiederhorn told C.G. that he

10 regretted taking FAT public "because [he] wanted to borrow from his

11 company." (Id.)

12     **B.   Wiederhorn's 1990s Shareholder Loans Were the Subject of
            Criminal and Civil Investigations**

13

14     In the late 1990s and early 2000s, the FBI and the Oregon United

15 States Attorney's Office began investigating Wiederhorn for a variety

16 of unlawful conduct including taking out shareholder loans "without

17 an intent to repay [them] later" in order "to obtain the money

18 without paying taxes." (Dkt. 118-3 at 3.) Between 2000 and 2004,

19 Oregon AUSAs communicated extensively with Wiederhorn's lawyers "that

20 the Government was looking into Wiederhorn's shareholder loans."

21 (Id.) Wiederhorn's lawyers made a presentation to the government in

22 an attempt to dissuade them from bringing charges related to the

23 1990s shareholder loans. (Id.; see also Reidy Decl. Ex. B.) Oregon

24 AUSAs advocated for moving forward with tax charges against

25 Wiederhorn related to the 1990s shareholder loans. (Dkt. 118-13 at

26 4.) An unnamed official at the Department of Justice reviewed the

27 1990s shareholder loans evidence and, based on the official's

28

4

impressions of the evidence, concluded that those charges "should not be prosecuted." (Dkt. 118-13 at 4.) In 2004, defendant ultimately pleaded guilty to one tax fraud charge and a bribery charge in connection with this investigation and served over a year in federal prison. (Dkt. 1 ¶ 31.)

After Wiederhorn's guilty plea, the IRS conducted a civil audit related to Wiederhorn's $67 million in discharged shareholder loans that he disclosed in 2000. (Reidy Decl. Ex. C.) Wiederhorn claimed that he did not have to pay income tax on the $67 million in discharged loans because he was insolvent, or the value of his debts exceeded the value of his assets. (Id. at 1.) Critically, civil IRS personnel were not "able to get the information in the possession of the US Attorney on this taxpayer." (Id.) Civil IRS employees sought information about the loans and Wiederhorn's purported insolvency from Wiederhorn through Information Document Requests, but Wiederhorn stated he did not have key information sought in his possession. For example, Wiederhorn told the IRS that he did not have "any workpapers or comput[at]ions that were prepared to show his insolvency" but was "sure that the preparer, Arthur Anders[e]n,[3] prepared computations." (Id.) Given the limited universe of information available to the IRS civil audit staff, the auditors concluded that "[f]raud can not be proven based upon the records available." (Dkt. 118-5 (emphasis added).)

---

[3] At the time of the audit, Arthur Andersen had ceased operations in the wake of the Enron scandal. See Hughes v. Huron Consulting Grp., Inc., 733 F. Supp. 2d 943, 945 (N.D. Ill. 2010).

1    **C.    The Government Has Made Efforts to Locate and Turn Over
2         Evidence Related to the 1990s Shareholder Loans
          Investigation**

3    After learning of Wiederhorn's earlier foray into using

4    shareholder loans as a means to avoid paying taxes, the government

5    sought to find and locate as much of the evidence related to this

6    prior case as possible.  To that end:

7    • The FBI requested the old case file from its archives and

8        produced its contents.  The case file contained

9        approximately 4,260 pages of scanned digitized documents,

10       including roughly 615 reports, approximately 89 of which

11       were reports of interviews.  The entire case file was

12       produced in discovery.  After defendants filed their

13       motion, the FBI located one additional report stating that

14       "worksheets depicting financial schedules [and] activity of

15       Wiederhorn" were destroyed in March 2006.  (Reidy Decl. Ex.

16       D.)

17   • IRS-CI requested a copy of the case file for Wiederhorn's

18       old case from the IRS-CI Seattle field office but the field

19       office had no records.  (Reidy Decl. Ex. E.)

20   • IRS-CI also contacted one of the case agents from the old

21       case who has since retired, Special Agent Craig Wyly, and

22       asked him to provide any documents related to the case.

23       All of the discoverable documents Agent Wyly provided,

24       including several memoranda of interview, were produced.

25       Out of an abundance of caution, IRS-CI is reviewing Agent

26       Wyly's emails and files to ensure that any other relevant

27       documents are located and produced.

28

- IRS-CI has also reviewed the emails and files of the other case agent for the old case who retired in 2018, Special Agent Julie Ward, to locate and produce any relevant documents.  Those of Agent Ward's emails with discoverable information will be produced.

- The government asked the United States Attorney's Office for the District of Oregon for any files in their possession related to their investigation and prosecution of Wiederhorn that resulted in his 2004 guilty plea.  In response, the US Attorney's Office provided the only file they had which contained administrative documentation related to post-conviction litigation regarding disclosure of grand jury materials.

- The government reached out to the Department of Justice Tax Division ("DOJ-TAX") who provided their file related to the 1990s shareholder loans investigation.  The government reviewed the file and produced discoverable information within it, including a presentation Wiederhorn's lawyers at the time made to the Tax Division asking that charges not be filed as well as DOJ Tax attorney's summary of that presentation.  (Reidy Decl. Ex. B.)  Other documents from the file, including the IRS-CI Special Agent Report seeking DOJ-TAX authorization of tax charges against Wiederhorn related to the shareholder loans, were not produced.  The Special Agent Report in DOJ-TAX's archive did not include any of the underlying documents (such as email messages) that were mentioned in the report as exhibits.

1     • The government has also reached out to the Criminal

2      Division of the Department of Justice to determine which

3      component of the Department may have been involved in

4      consulting with Oregon AUSAs regarding the Wiederhorn

5      disposition.  The government recently obtained an email

6      communication suggesting that, in December 2003, the

7      Associate Deputy Attorney General directed the District of

8      Oregon to consult with the Fraud Section of the Criminal

9      Division regarding plea negotiations.  (Reidy Decl. Ex. F.)

10     The government has requested any records that may exist

11      related to the consultation between the Oregon AUSAs and

12      the Fraud Section related to Wiederhorn.  Criminal Division

13      records staff have begun searching for any physical or

14      digital records related to the matter and any discoverable

15      information found will be produced.

16   Despite these efforts, the government has not been able to

17 locate the emails, financial records, and other underlying documents

18 referenced in the produced reports related to the 1990s shareholder

19 loans investigation.

20 **III. ARGUMENT**

21   **A. Legal Standard**

22   "There is no general constitutional right to discovery in a

23 criminal case."  <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977); <u>see</u>

24 <u>also</u> <u>United States v. Ruiz</u>, 536 U.S. 622, 629 (2002) ("[T]he

25 Constitution does not require the prosecutor to share all useful

26 information with the defendant.").  And "there is, of course, no duty

27 to provide defense counsel with unlimited discovery of everything

28

1    known by the prosecutor." <u>United States v.</u> Agurs, 427 U.S. 97, 106

2    (1976).  Neither Rule 16, nor <u>Brady v. Maryland</u>, 373 U.S. 83 (1963),

3    nor <u>Giglio v. United States</u>, 405 U.S. 150 (1972), authorize fishing

4    expeditions or sweeping discovery requests.  <u>United States v. Bagley</u>,

5    473 U.S. 667, 675 (1985).

6        **B.   Defendants Are Not Entitled to All Government "Notes or**

        **Internal Correspondence" Regarding Defense Attorney**

7            **Presentations**

8        This Court should not order the government to turn over all

9    "notes or internal correspondence related to the three presentations"

10   Wiederhorn's former counsel gave to various DOJ components because

11   such materials contain opinion work product.[4]  "Not even the most

12   liberal of discovery theories can justify unwarranted inquiries into

13   the files and the mental impressions of an attorney." <u>Hickman v.</u>

14   <u>Taylor</u>, 329 U.S. 495, 510 (1947).  The work product doctrine first

15   pronounced in <u>Hickman</u> protects from disclosure "[a]ny opinion work

16   product—meaning, the attorney's mental impressions, conclusions,

17   opinions or legal theories." <u>United States v. Sanmina Corp.</u>, 968

18   F.3d 1107, 1125 (9th Cir. 2020).  Even though defendant Wiederhorn's

19   prior criminal case ended more than 20 years ago, "[t]he work product

20   privilege extends beyond the termination of litigation." <u>Pamida,</u>

21   <u>Inc. v. E.S. Originals, Inc.</u>, 281 F.3d 726, 731 (8th Cir. 2002).

22       Opinion work product includes "attorneys' assessment of the

23   strength of such facts and evidence" involved in the case.  <u>United</u>

24   <u>States ex rel. Burroughs v. DeNardi Corp.</u>, 167 F.R.D. 680, 684 (S.D.

25   

26       [4] The government has only located notes of Wiederhorn's

attorney's statements during a presentation to DOJ-TAX and provided

27   those notes to defendants.  (Reidy Decl. Ex. B.)  The government

opposes disclosure of any other notes it may find on the grounds set

28   forth here.

1   Cal. 1996).  Opinion work product also encompasses "opinions . . .

2   regarding . . . the existence and merit of certain of [d]efendants'

3   defenses."  Doe v. Society of Missionaries of Sacred Heart, 2014 WL

4   1715376, at *3 (N.D. Ill. May 1, 2014).  Here, the work product

5   doctrine unquestionably protects prosecutors' assessment of the

6   strength of their case or the viability of Wiederhorn's defenses

7   related to Wiederhorn's attorneys' presentations on the 1990s

8   shareholder loans.  To the extent any documents that are later found

9   reflect those mental impressions, the government will not provide

10  those documents pursuant to the work product doctrine.

11      Brady does not change the analysis.  "[A] prosecutor's opinions

12  and mental impressions of the case are not discoverable under Brady

13  unless they contain underlying exculpatory facts."  Lopez v. Ryan,

14  630 F.3d 1198, 1210 (9th Cir. 2011) (affirming rejection of Brady

15  claim based on note stating that "there was an insufficient factual

16  basis to support a conviction of Lopez for the assault"), overruled

17  on other grounds by McKinney v. Ryan, 813 F.3d 798 (9th Cir. 2015).

18  Consistent with Lopez, and based on the assumption that defendants

19  may not have access to the presentations, the government has already

20  turned over the only presentation-related internal memoranda it has

21  found that merely summarized Wiederhorn's former lawyers'

22  presentation to DOJ-Tax.  (Reidy Decl. Ex. B.)  But prosecutors'

23  assessments of the strength or weakness of Wiederhorn's counsel's

24  arguments, or the case against Wiederhorn generally, should remain

25  protected from disclosure as opinion work product.[5]

26  _____

27      [5] Defendant falsely states that "the Court agreed that the
    government must produce" all presentation-related notes.  (Dkt. 118-1

28                                                     *(footnote cont'd on next page)*

                                          10

Moreover, <u>Brady</u> does not require the government to provide defendants with presentations by Wiederhorn's prior counsel to which they already have access. Defendant Wiederhorn references "three presentations Mr. Wiederhorn's then-counsel gave" of which defense counsel is already aware--"to the USAO, DOJ Tax, and DOJ Criminal Division." (Dkt. 118-1 at 13-14.) <u>Brady</u> imposes a duty upon the government to disclose only "information which had been known to the prosecution but unknown to the defense." <u>Agurs</u>, 427 U.S. at 103. Put another way, "<u>Brady</u> does not require the government to turn over exculpatory evidence if the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence." <u>United States v. Grossman</u>, 843 F.2d, 78, 85 (2d Cir. 1988). Because defendants are already informed of the substance of Wiederhorn's prior counsel's presentations to various DOJ components, <u>Brady</u> does not require the government to re-provide them with the same information in discovery.

**C.    Defendant Is Not Entitled to the IRS-CI Special Agent Report Regarding the 1990s Shareholder Loans**

Similarly, the Court should not order the government to turn over the IRS-CI Special Agent Report from defendant's prior case because it is protected from disclosure under Federal Rule of Criminal Procedure 16. Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."

---

at 13-14.) In reality, the government expressly reserved the right to withhold any presentation-related notes that contained protected work product and the Court did not order disclosure of such protected information in ruling on defendant's prior motion to compel.

Fed. R. Crim. P. 16(a)(2); see also United States v. Armstrong, 517

U.S. 456, 463 (1996) ("[U]nder Rule 16(a)(2), [a defendant] may not

examine Government work product in connection with his case.").

Rule 16(a)(2) creates a privilege against disclosure for the

IRS-CI Special Agent report from discovery.  In United States v.

Mann, 61 F.3d 326 (5th Cir. 1995), the Fifth Circuit addressed Rule

16(a)(2)'s application to a "Special Agent's report prepared by . . .

the Internal Revenue Service" that "included assessments of the

strength of the case" and contained a lengthy "evidence or factual

section."  Id. at 328-29 (cleaned up).  Examining the language of

Rule 16(a)(2), the Fifth Circuit concluded that "[a]s an internal

government document produced by government agents in connection with

the investigation of this case, the reports at issue clearly fall

within the ambit of this rule, and thus are exempted from discovery."

Id. at 331.  The Fifth Circuit then reversed the district court's

order sanctioning the government for failing to turn over the Special

Agent Report.  Id. at 327.  The Ninth Circuit later relied on Mann's

reasoning to hold that "Rule 16(a)(2) extends to . . . witness

statements to be used in a federal criminal prosecution" as well as

"reports revealing the identities of the witnesses and summarizing

their statements" and reversing a district court's order of their

disclosure.  United States v. Fort, 472 F.3d 1106, 1120 (9th Cir.

2007).  The Ninth Circuit also held that Brady did not require

disclosure of the reports because it "pertains to inculpatory, not

exculpatory evidence."  Id. at 1110.  Taken together, Mann and Fort

demonstrate that the IRS-CI Special Agent's report presenting all of

the inculpatory evidence that supported charging defendant Wiederhorn

1    with various tax offenses is protected from disclosure under Rule

2    16(a)(2).

3        **D.    The Court Should Not Order Discovery of Any Destruction of Decades-Old Materials from Defendant's Prior Criminal Case**

4

5        Defendant wrongly contends that the government must provide

6    detailed information regarding the destruction of any documents from

7    the investigation of defendant's 20-year-old criminal case because

8    such destruction "could be grounds for dismissing the indictment

9    altogether" or a variety of other sanctions.  (Dkt. 118-1 at 16.)

10   But to warrant a much less severe sanction, an adverse inference

11   instruction, "a criminal defendant must establish that the evidence

12   was destroyed in bad faith."  United States v. Romo-Chavez, 681 F.3d

13   955, 961 (9th Cir. 2012) (cleaned up).  "[T]he bad faith requirement,

14   absent from the general civil standard, exists in criminal cases

15   because it limits the extent of the police's obligation to preserve

16   evidence to reasonable bounds and confines it to that class of cases

17   where the interests of justice most clearly require it."  Id.

18   (cleaned up).  At a minimum, a party seeking to show bad faith must

19   show "that the government was on notice that the records had

20   potential relevance to the litigation."  Akiona v. United States, 938

21   F.2d 158, 161 (9th Cir. 1991) (reversing adverse inference sanction

22   based on destruction of government documents related to disposition

23   of grenade where "almost twenty years passed between the time when it

24   was clear that the government possessed the grenade and the time when

25   the grenade was used to harm the plaintiffs").  Moreover, destruction

26   of documents that occurs pursuant to procedures "governing disposal

27   of inactive records" cannot support a bad faith finding.  Vick v.

28

13

1  Texas Employment Commission, 514 F.2d 734, 737 (5th Cir. 1975)

2  (rejecting request for adverse inference where records destroyed

3  "under routine procedures without bad faith and well in advance of

4  Vick's service of interrogatories").

5       There can be no plausible argument that the government engaged

6  in bad faith conduct by destroying any documents related to

7  defendant's prior criminal investigation.  Defendant's earlier case

8  was investigated during the early 2000s and concluded in a guilty

9  plea and sentence in 2004.  This investigation into Wiederhorn's most

10 recent shareholder-loan-related fraud did not begin until more than a

11 decade and a half later, in 2020.  Any destruction of documents that

12 occurred during this sixteen-year period (such as the FBI's March

13 2006 destruction of certain financial records (Reidy Decl. Ex. D))

14 could not possibly reflect bad faith because the government had no

15 way of knowing the relevance of Wiederhorn's prior case to his

16 current case before the current case had even started.  See Akiona,

17 938 F.2d at 161 ("Here, the plaintiffs have not shown any bad faith

18 in the destruction of the records, nor even that the government was

19 on notice that the records had potential relevance to litigation.").

20 Instead, the destruction of evidence following the conclusion of

21 defendant's prior case merely reflected the typical disposition of

22 the prosecution's evidence upon the end of a criminal case.  See

23 generally Smart v. County of Gloucester, 2024 WL 532092, at *6

24 (D.N.J. Feb. 8, 2024) ("At the conclusion of a case, a prosecutor

25 typically will either destroy the evidence or turn the evidence over

26 to the person or entity from whom the evidence was received.").

27 Moreover, given the two decades that have passed since the end of

28

                                    14

defendant's case, the government would have difficulty ascertaining any details of destruction, much less the level of granular detail requested by defendant.  The Court should not order the government to provide a detailed accounting of obviously good faith document destruction, particularly in light of the age of defendant's prior case.

Defendant's cases are inapposite.  None of the authorities cited stand for the proposition that the disposition of records from a prior criminal case that had been closed over a decade before the current investigation constitute evidence of potential misconduct or of a poorly conducted investigation.  See United States v. Howell, 231 F.3d 615, 625 (9th Cir. 2000) (mistake in police reports regarding money had been collected from a defendant); United States v. Sager, 227 F.3d 1138, 1142-43 (9th Cir. 2000) (discrepancies between inspector's description of witness statement); United States v. Balwani, 2022 WL 1720081, at *2 (N.D. Cal. May 27, 2022) (purported failure to preserve company database that housed "patient test results and all quality control data" at center of fraud trial); United States v. Jefferson, 2025 WL 53338, at *6 (W.D. Wash. Jan. 8, 2025) (failure to investigate self-defense in assault by strangulation case).

### E. Defendants' Request to Search for 1990s Shareholder Loans Discovery and Produce All Discoverable Material Is Moot

Given that the government has already searched "the Oregon USAO, DOJ Tax, Main Justice, the IRS, and the FBI" for all discoverable information regarding defendant's prior case, has produced any discoverable information in its possession, and committed to

producing any discoverable information it finds in the future (particularly with regard to the outstanding requests to the Criminal Division), this Court should deny defendant's motion to compel as moot. See, e.g., United States v. Weigand, 482 F. Supp. 3d 224, 244 (S.D.N.Y. 2020) (denying as moot motion to compel materials that "the Government represents that is has produced" and would produce any additional responsive materials); United States v. Zemlyansky, 945 F. Supp. 2d 438, 484 (S.D.N.Y. 2013) (denying motion to compel Rule 16, Brady, and Giglio material where the government "represented that it will turn over any" such material before trial); United States v. Harold, 734 F. Supp. 3d 1102, 1121 (D. Or. 2024) (denying motions to compel discovery that government "represented that it has produced").

**F.    Defendants' Request for "Immediate" Production or Production within 14 Days of Court's Order Should Be Denied as Premature**

Defendants' request for an order of "immediate production of all outstanding 1990s Loans Discovery" or to produce such information "within 14 days of the Court's order" should be denied.  (See Dkt. 118-1 at 12, 16.)  "As a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." United States v. Coppa, 267 F.3d 132, 136, 146 (2d Cir. 2001) (granting mandamus to vacate order "to disclose all Brady and Giglio materials immediately upon request by a defendant").  "Brady merely requires the government to turn over the evidence in time for it to be of use at trial." United States v. Fernandez, 231 F.3d 1240, 1248 (9th Cir. 2000) (emphasis in original); see also United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is

insufficient to require its production in advance of trial.").
Because trial is set for six months from now, the government should
be afforded additional time to search for the materials requested by
defendants not already produced.

**IV.  CONCLUSION**

Defendants' motion to compel should be denied.