GIBSON, DUNN & CRUTCHER LLP
DOUGLAS FUCHS, SBN 196371
  DFuchs@gibsondunn.com
NICOLA HANNA, SBN 130694
  NHanna@gibsondunn.com
JAMES ROTSTEIN, SBN 305072
  JRotstein@gibsondunn.com
RAYCHEL TEASDALE, SBN 335034
  RTeasdale@gibsondunn.com
BRENNA GIBBS, SBN 342388
  BGibbs@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendant*
*Andrew A. Wiederhorn*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW A. WIEDERHORN, WILLIAM J. AMON, REBECCA D. HERSHINGER, AND FAT BRANDS INC.,<br><br>Defendants. | CASE NO. 2:24-CR-00295-RGK<br><br>**MR. WIEDERHORN'S REPLY IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF OUTSTANDING DISCOVERY**<br><br>**Trial**: October 28, 2025<br>**Hearing Date**: May 19, 2025<br>**Hearing Time**: 10:00 a.m.<br>**Dept**: Courtroom 850, 8th Floor<br>**Judge**: Honorable R. Gary Klausner |

# INTRODUCTION

After almost a year of inquiry by the defense, the government now makes clear that it destroyed hundreds of thousands of pages of highly exculpatory evidence relating to the 1990s loans. That is the very evidence the government considered in deciding, two decades ago, that Mr. Wiederhorn could not be charged with a crime related to the 1990s loans. Undeterred, the government now seeks to resurrect those old loans and link them to the current case, believing it will have a better shot at conviction now that the exculpatory evidence has been destroyed. Such "win at all costs" tactics should not be countenanced.

The government's efforts to justify its conduct fail. Although the government purports to lay out the good faith steps it took to locate this discovery (Opp. at pp. 6–8), it provides essentially no evidence memorializing when these alleged efforts were made, what the government requested, or whether it even issued preservation notices for this evidence when the investigation commenced.[1] The government does not even include a *declaration* attesting to these facts. The only "evidence" attached to the government's opposition is an email to the IRS-CI Seattle field office dated March 16, 2023—nearly ***three years*** after the start of this investigation. Dkt. 121-1 ("Reidy Decl."), Ex. E. This email reveals that the case files relating to the 1990s loan were destroyed at some unspecified time ***prior to indictment***. Yet in the indictment, the government improperly linked the 1990s loans to the unrelated Fog Cutter lines of credit (Dkt. 1 ¶¶ 25–32), despite knowing that the government had destroyed hundreds of thousands of pages of exculpatory evidence and that Mr. Wiederhorn's right to review this evidence had been violated. This is not only alarming, but also fundamentally unjust and reveals the lengths to which the government will go to convict Mr. Wiederhorn.

The missing evidence is critical for Mr. Wiederhorn to rebut the government's false claims that the 1990s loans were illegal, relevant to Mr. Wiederhorn's state of

---

[1] Documents Mr. Wiederhorn received in discovery indicate the investigation began in early March 2020. Declaration of Douglas Fuchs (Fuchs Decl.,), ¶ 2, Ex. 1.

mind, and/or part of the overall scheme that is alleged in the indictment, should this evidence be admitted at trial.[2] The government has indicated it will call "C.G." (or "Tax Advisor 1") to testify about alleged events from more than two decades ago. However, the government has not produced a *single* communication from the relevant time period (the 1990s) for Mr. Wiederhorn to use on cross-examination. It is undisputed that C.G.'s accounting firm, Arthur Andersen, signed off on the tax treatment of the 1990s loans, (*see* Reidy Decl., Ex. B at p. 12), but the government's opposition makes clear that the government destroyed the underlying documents it received in connection with the investigation of the 1990s loans. These documents would show the rigor with which Arthur Andersen reviewed the tax positions, the level of Mr. Wiederhorn's transparency, and the identities of the other tax professionals who reviewed the loans and addressed and overrode any alleged concerns[3] C.G. claims to have raised. Indeed, it is suspicious and highly prejudicial to Mr. Wiederhorn that the government only has reports from the one Arthur Andersen professional who allegedly supports *the government's* theory (a theory that is at odds with Arthur Andersen's and the government's conclusions twenty years ago), but has not produced reports from interviews of the many other professionals who analyzed the tax treatment of the 1990s loans, found it was appropriate, and signed Mr. Wiederhorn's returns. The government says it has produced 4,260 pages from the FBI's old case file (Opp. at p. 6), but the vast majority of this discovery does not relate to the 1990s loans at all—rather, it relates to Jeffery Grayson, the primary focus of the government's investigation (*see* Mot. at p. 5).

It is also inexplicable and concerning that despite Mr. Wiederhorn's repeated

---

[2] Mr. Wiederhorn's position is that this evidence is not relevant to any count charged in the indictment, is highly prejudicial, will confuse the jury, and will consume significant additional trial time, and is therefore inadmissible. Mr. Wiederhorn will move to exclude all evidence or reference to the 1990s loans at the appropriate time.

[3] Because the evidence was destroyed by the government, it is not even clear whether C.G. actually expressed concerns over the 1990s loans in contemporaneous emails and documents or ultimately supported the tax treatment of these loans given that her employer signed off on their tax treatment.

requests for this discovery starting days after he was indicted in May 2024,[4] the government failed to immediately disclose that it learned in 2023 that much of it had been destroyed (*see* Reidy Decl., Ex. E), and is only now searching for additional documents (Opp. at p. 8 [stating the Criminal Division has "**begun** searching"]). Instead, the government strung Mr. Wiederhorn along by ignoring his requests and refusing to provide clear answers about whether the discovery even existed. Fuchs Decl., ¶ 3.

And despite opposing Mr. Wiederhorn's motion, the government's behavior establishes that this motion is both meritorious and necessary. The government has demonstrated a pattern in this case of only taking Mr. Wiederhorn's right to discovery seriously *after* he files a motion to compel. For instance, after the government investigated Defendants for nearly four years, filed the indictment on May 9, 2024, and promised that the discovery would be produced by July 2024, Defendants were forced to file a motion to compel on September 9, 2024, to obtain the vast majority of discovery. *See* ECF No. 84. On September 11 and 13, in an attempt to deflect attention from its transgressions, the government rushed to make large productions of discovery and promised to search for and produce additional information. Nonetheless, as of this filing, the government still has not produced all of the discovery relating to Defendants' initial motion to compel, which Defendants plan to address in a future filing.

Then, on April 14, 2025, Mr. Wiederhorn filed this motion. On April 30, 2025, the government made a small production of discovery, some of which related to the 2000s investigation. Fuchs Decl., ¶ 4. The government also stated in its opposition that "*[a]fter defendants filed their motion*, the FBI located one additional report stating that 'worksheets depicting financial schedules [and] activity of Wiederhorn' were destroyed in March 2006." Opp. at p. 6 (emphasis added); *see also* Fuchs Decl., Ex. 2 (IRS Special Agent requesting 1990s loans discovery on April 15, 2025 as "an expedited request for

---

[4] Mr. Wiederhorn first requested the Wilshire discovery in a letter to the government on May 14, 2024. ECF No. 118-6 at p. 4 (requesting "[a]ll discoverable information pertaining to the 'investigation' referenced in paragraph 31 of the indictment").

3

MR. WIEDERHORN'S REPLY IN SUPPORT OF MOTION TO COMPEL

the government" to respond to this motion). And despite defense counsel's repeated requests for the names of the individuals at Main Justice who were involved in the prior investigation and decision not to charge Mr. Wiederhorn in connection with the 1990s loans—and the government's repeated insistence they did not have this information—the government's opposition states it "recently obtained an email communication" regarding DOJ's instruction to the Oregon AUSA to conduct plea negotiations. Opp. at p. 8; Reidy Decl., Ex. F. This email reveals the exact information defense counsel has requested from the government on multiple occasions (Fuchs Decl., ¶ 5), yet the government conveniently did not find until this motion was filed.

This is not the way criminal discovery is supposed to work. The government has an affirmative obligation, including under this Court's standing order, to produce all Rule 16 and *Brady* information promptly. The government has continually failed to meet its obligations in this case. Indeed, the government has repeatedly represented that certain documents do not exist, only to later produce the requested documents.

Thus, Mr. Wiederhorn respectfully requests that the Court order the government to immediately provide details, under oath, of the document destruction as specified in Mr. Wiederhorn's motion (*see* Mot. at p. 16), including when (if ever) the government issued a preservation notice and requested the documents relating to the 1990s loans. This information is necessary to determine the full extent of document destruction, the ramifications for the defense, and whether the government acted appropriately.

As for the two specific categories of documents at issue—(1) notes and correspondence relating to the presentations Mr. Wiederhorn's then-counsel gave to the Oregon USAO; DOJ Criminal Division; and DOJ Tax in the early 2000s, and (2) an IRS-CI Special Agent Report—both of these categories of documents must be produced because they undoubtedly contain exculpatory facts, which overrides any purported work product protection. Further, because the IRS-CI Special Agent Report was not prepared in connection with *this* case or investigation, Rule 16(a)(2) does not protect it from disclosure. *See infra* at pp. 8–9. Mr. Wiederhorn respectfully requests that the

Court order the government to produce this information immediately.

## RESPONSE TO THE GOVERNMENT'S FACTUAL BACKGROUND

The government's opposition distorts and omits critical facts. The government claims that the 1990s loans were Mr. Wiederhorn's "first shareholder-loan-related fraud." Opp. at p. 3. But—as the record makes clear—these loans were investigated in the early 2000s and the government determined Mr. Wiederhorn could *not* be charged with any crimes relating to them. *See* ECF Nos. 118-3, 118-4. The IRS even concluded it could not prove Mr. Wiederhorn acted with the requisite intent to impose a *civil* penalty. *See* ECF No. 118-5. Mr. Wiederhorn's 2004 guilty pleas were for wholly distinct conduct—overstating a capital loss on a tax return (resulting in no tax loss to the IRS) and releasing an ERISA plan manager from a personal loan guarantee. *See* ECF No. 105-5. The government also falsely insinuates that the IRS did not impose a civil penalty on Mr. Wiederhorn because he withheld information from the IRS. *See* Opp. at p. 5. But the government omits the portion of the document that states that the IRS did not impose a civil penalty because it recognized that Mr. Wiederhorn's tax "return was prepared by Arthur Andersen" and Arthur Andersen "did the research for the insolvency determination." Reidy Decl., Ex. C. In other words, one of the world's leading tax preparation firms determined that the tax treatment was appropriate, and Mr. Wiederhorn relied on them, eviscerating the intent necessary to impose a civil penalty let alone the intent required in a criminal case. The government's insistence on rewriting history reflects a concerted effort to smear Mr. Wiederhorn and mislead the Court.

The government's brief also paints a false picture of C.G. as a whistleblower. Opp. at pp. 2–4. The government ignores that any concerns C.G. may have raised were researched, vetted, and ultimately resolved by other professionals at Arthur Andersen who worked with Mr. Wiederhorn in the 1990s, and the firm concluded that the loans were bona fide and that the tax position taken in Mr. Wiederhorn's return (that Andersen signed) was appropriate. Indeed, the signed tax returns are the definitive statement of Arthur Andersen's position. Documents that have been produced to Mr. Wiederhorn in

discovery state that the 1990s loans were "discussed in numerous emails, they were the subject of dozens of internal meetings, and they were analyzed in a score or more memoranda."  Reidy Decl., Ex. B at p. 4.  Significantly, however, these underlying documents reflecting Andersen's collective position validating the loans and the tax treatment have not been produced, and the government has failed to disclose the identity of the other tax advisors.  Instead, the government has cherry-picked facts and a single witness—and has only produced discovery that it believes supports its position.

## ARGUMENT

The government does not dispute that it must produce material and exculpatory evidence relating to the 1990s loans.  However, far from being moot, there are still several live issues relating to Mr. Wiederhorn's motion.  *First*, the government claims it does not need to produce the presentations or the corresponding notes relating to the presentations Mr. Wiederhorn's then-counsel gave the USAO, DOJ Criminal Division, and DOJ Tax in the 2000s.  *Second*, the government says it does not need to produce the IRS-CI Special Agent Report.  And *third*, the government argues it is not required to provide details of its destruction of critical documents.  These assertions are incorrect.

### I. The Government Must Produce The USAO, DOJ Tax, and DOJ Criminal Division Presentations And Corresponding Notes

Despite already producing some notes and correspondence relating to presentations given by Mr. Wiederhorn's counsel during the 1990s loans investigation (Reidy Decl., Ex. B at p. 29), the government suddenly claims it will no longer "provide those documents pursuant to the work product doctrine" (Opp. at p. 10).  But the government's position is premature.  The government concedes it is not presently aware of any additional notes. Opp. at p. 9 n.4.  Thus, the government could not possibly refuse to disclose "any documents that are later found" on work product ground.  Opp. at p. 10.  They do not yet know if those notes and correspondence actually reveal the attorney's "mental impressions, conclusions, opinions or legal theories."  *United States v. Sanmina Corp.*, 968 F.3d 1107, 1125 (9th Cir. 2020).

Even if the government were to identify additional notes constituting attorney work product, there is broad consensus that when a prosecutor's opinion and impressions of a case "contain underlying exculpatory facts," that work product is discoverable under *Brady*. *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006); *United States v. Kohring*, 637 F.3d 895, 907–08 (9th Cir. 2011) ("In general, a prosecutor's opinions and mental impressions of the case are not discoverable under Brady/Giglio unless they contain underlying exculpatory facts," internal quotations omitted). Here, there is no question the notes of presentations made by Mr. Wiederhorn's counsel would contain exculpatory facts—Mr. Wiederhorn was not charged with a crime relating to the 1990s loans.

And the government's bald claim that it does not need to produce any additional presentations[5] because Mr. Wiederhorn is already "informed" of the "substance" (Opp. at p. 11) of three presentations is not persuasive given that the government has admitted it does not have the vast majority of evidence relating to the 1990s loans (Opp. at p. 8). At least two presentations remain outstanding (there could be more)—the USAO and DOJ Criminal Division presentations. Further, it is not enough for Mr. Wiederhorn to merely be "informed" of the "substance" of the presentations—the law only allows the government to withhold *Brady* material when a defendant is already "aware of the *essential facts* enabling him to take advantage of any exculpatory evidence." *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (quotations omitted) (emphasis added). But the government has not produced anything disclosing the "essential facts" contained in the outstanding presentations, including the very presentations themselves.

Thus, Mr. Wiederhorn respectfully requests that the Court order the government to (a) perform a further search for any presentations or notes and correspondence relating to these presentations; and (b) produce any exculpatory material contained therein.

## II. The Government Must Produce The IRS-CI Special Agent Report

The government argues it does not need to produce the IRS-CI Special Agent

---

[5] The government has only produced the DOJ Tax presentation to Defendants. Reidy Decl., Ex. B.

Report because it is "protected from disclosure under Federal Rule of Criminal Procedure 16." Opp. at p. 11. Rule 16(a)(2) provides that: "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" are not subject to disclosure in criminal cases. But courts have found that Rule 16(a)(2) only applies to materials made in connection with the instant case. For example, in *United States v. Gatto*, the court found that Rule 16(a)(2) "refers only to attorney work product on the current case, **not to investigations and prosecutions from the past**." *United States v. Gatto*, 729 F. Supp. 1478, 1481 (D.N.J. 1989) (emphasis added).

Thus, the government's argument hits a roadblock at the outset. The IRS-CI Special Agent Report was not made in connection with the investigation of ***this case***— it was made in connection with the entirely separate previous investigation and case in the early 2000s, which concluded in the DOJ declining to bring charges against Mr. Wiederhorn related to the 1990s loans. Indeed, the government concedes these were two separate cases when it said, "the destruction of evidence ***following the conclusion of defendant's prior case*** merely reflected the typical disposition of the prosecution's evidence upon the ***end of a criminal case***." Opp. at p. 14 (emphasis added).

The government's reliance on *United States v. Fort* is misplaced. In *Fort*, the question was whether police reports created by San Francisco police officers prior to the federal prosecutor's involvement were protected from disclosure under Rule 16(a)(2). *United States v. Fort*, 472 F.3d 1106, 1109 (9th Cir. 2007). As an initial matter, the Ninth Circuit noted that its ruling did "not involve the government's disclosure obligations under *Brady*" because the information at issue pertained "to inculpatory, not exculpatory, evidence," and that "nothing in this opinion should be interpreted to diminish or dilute the government's *Brady* obligations." *Id.* at 1110. The government tries to avoid this important distinction by claiming the IRS-CI Report only contains inculpatory information. Opp. at pp. 12–13. But this is nonsensical—Mr. Wiederhorn was ***not charged or penalized*** for any conduct relating to the 1990s loans. Thus, it is

unfathomable the Report could *only* contain inculpatory information.

Even still, *Fort* supports finding that the IRS-CI Report falls outside of Rule 16(a)(2) because it was not created in connection with this case. Although the Court in *Fort* held that the state reports were protected from disclosure, the Ninth Circuit noted that "[w]hen state or local officials conduct an investigation that ultimately leads to a federal . . . prosecution against the same defendant ***for the very activities investigated***," there is "one 'case'" under Rule 16. *Fort*, 472 F.3d at 1114 (emphasis added).[6] Here, nowhere in the indictment is Mr. Wiederhorn charged with fraud related to the 1990s loans, but instead for separate, distinct lines of credit issued twenty years later, between 2010–2020. Dkt. No. 1 ¶ 1.

Thus, Mr. Wiederhorn respectfully requests that the Court order the government to produce the IRS-CI Report because it is not subject to Rule 16(a)(2), or in the alternative, order the production of any exculpatory facts contained in the Report.

### III. The Government Must Provide Details Of Its Document Destruction

The government next baldly claims it need not provide any information on the document destruction because "[t]here can be no plausible argument that the government engaged in bad faith conduct by destroying" the 1990s loans evidence. Opp. at p. 14. But bad faith is not required when clearly exculpatory evidence—like here—is missing or has been destroyed. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *United States v. McKnight*, 2020 WL 5046163, at *1 (W.D. Wash. Aug. 26, 2020) (stating "if the missing evidence is 'materially exculpatory,' as opposed to merely 'potentially useful,' bad faith need not be demonstrated"). Further, details of the document destruction are relevant to whether this investigation was performed poorly or in bad faith, which is subject to disclosure under *Brady*. *See* Mot. at 15–16 (citing cases).

And, even if a due process violation has not occurred, a court may still impose

---

[6] *Mann* can be distinguished on the same grounds. The IRS Report in that case involved the conduct charged in the indictment. *United States v. Mann*, 61 F.3d 326, 327–28 (5th Cir. 1995).

sanctions for the destruction of evidence. *See United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011). When evidence has been destroyed, courts should evaluate, among other things, "whether the evidence was lost or destroyed while in its custody" and "whether the Government acted in disregard for the interests of the accused." *United States v. Swenson*, 2014 WL 104990, at *1 (D. Idaho Jan. 9, 2014) (citing *United States v. LoudHawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (Kennedy J., concurring)).

Thus, Mr. Wiederhorn is entitled to know when and why evidence was destroyed so that he can seek appropriate relief. Mr. Wiederhorn also must know details of when prosecutors and agents in this case began searching for discovery relating to the 1990s loans. The email attached to the government's opposition shows that it requested certain documents relating to the 1990s loans **three years** after it started the investigation. This is evidence the government was, at a minimum, "negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions" and has "acted in disregard" for Mr. Wiederhorn's interests. *LoudHawk*, 628 F.2d at 1152.

Further, this Court need not—and should not—take the government at its word that this was "obviously good faith document destruction." Opp. at p. 15. The government claims that the destruction was "the typical disposition of the prosecution's evidence upon the end of a criminal case" (Opp. at p. 14), but provides **no** evidence or information to support this (*see supra* at p. 1). The government has also admitted to defense counsel that it destroyed other relevant IRS files after this investigation started. Fuchs Decl., ¶ 6, Ex. 3. The government should provide the details requested in Mr. Wiederhorn's motion. *See* Mot. at p. 16.

## CONCLUSION

For these reasons, the Court should order the government to immediately produce any DOJ Criminal Division and USAO presentations, notes and correspondence relating to any DOJ Criminal Division, USAO, and DOJ Tax presentations, and the IRS-CI Special Agent Report. The Court should also order the government to provide details of its document destruction within 14 days of this Court's Order.

DATED: May 5, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Douglas Fuchs*
　　Douglas Fuchs

　　*Attorney for Defendant*
　　*Andrew A. Wiederhorn*

11

MR. WIEDERHORN'S REPLY IN SUPPORT OF MOTION TO COMPEL

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Andrew Wiederhorn, certifies that this brief does not exceed ten (10) pages, which complies with this Court's Standing Order.

DATED: May 5, 2025          By: */s/ Douglas Fuchs*
                                Douglas Fuchs

                                *Attorney for Defendant Andrew A. Wiederhorn*